IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:     THEADORA NICOLE TRAMMELL,<br><br>          Debtor. | Case No. 07-33803-KRH<br>Chapter 7 |
| JEFFREY S HAAS,<br><br>          Plaintiff,<br><br>v.<br><br>THEADORA NICOLE TRAMMELL,<br><br>          Defendant. | APN 08-03007 |

## MEMORANDUM OPINION

Trial was conducted on April 8, 2008, April 9, 2008, and April 16, 2008 on the complaint (the "Complaint") of Plaintiff Jeffrey S. Haas (the "Plaintiff") against the Debtor, Theadora Nicole Trammell (the "Defendant"), for a determination of dischargeability of debts under 11 U.S.C. §§ 523(a)(2) and (a)(6). The parties presented the testimony of ten witnesses and introduced voluminous exhibits. At the conclusion of trial, the Court took the matter under advisement. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (I), and (J). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court now makes the following findings of fact and conclusions of law.

The Defendant filed her Chapter 7 bankruptcy petition on October 12, 2007. She received a discharge on January 28, 2008. The Plaintiff timely filed the Complaint instituting

this adversary proceeding on January 11, 2008. The Plaintiff seeks recovery from the Defendant based on malicious prosecution and alleges that this debt is nondischargeable under 11 U.S.C. § 523(a)(6). The Plaintiff also asserts that the Defendant fraudulently obtained a $13,500 loan from him and alleges that this debt is nondischargeable under 11 U.S.C. § 523(a)(2). The Plaintiff seeks punitive damages; he claims that the Defendant's behavior was willful and malicious.[1] Upon consideration of the evidence and arguments presented by counsel at the trial and the pleadings presented, the Court finds that the Plaintiff has not met his burden of proof on any of these three counts. Judgment will be entered in favor of the Defendant; Plaintiff's claims against her are dischargeable.

An overriding policy goal of the Bankruptcy Code[2] is to afford poor and unfortunate debtors with a fresh start. *Dominion Va. Power v. Robinson (In re Robinson),* 340 B.R. 316, 328 (Bankr. E.D. Va. 2006) (citing *KMK Factoring, L.L.C. v. McKnew (In re McKnew)*, 270 B.R. 593, 617 (Bankr. E.D. Va. 2001)). This policy consequently requires courts to construe exceptions to discharge narrowly against the objecting creditor and in favor of the debtor. *Id.* at 329 (citations omitted). Plaintiff has the burden of proving by a preponderance of the evidence that the provisions of §§ 523(a)(2) or 523(a)(6) of the Bankruptcy Code apply to the claims he asserts against the Defendant in this case. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Section 523(a)(6) excepts from discharge "an individual debtor from any debt — for willful and malicious injury by the debtor to another entity or to the property of another entity."

---

[1] The Complaint contained a fourth count, alleging that the Defendant's discharge should be revoked for hiding assets from the Chapter 7 trustee and making false statements in her bankruptcy petition, but that count was withdrawn during trial.

[2] Section 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S. Ct. 113–14, 27 L.Ed.2d 124 (1970) (citations omitted).

An injury is willful when the court can determine that the debtor intended the act and by his or her conduct intended to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L.Ed.2d 90 (1998). The "word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.*

Since the *Geiger* decision, courts have struggled to determine whether a debtor must have specifically intended the injury or whether the commission of an intentional tort that is "substantially certain to result in injury" is sufficient to satisfy the willfulness requirement. *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670 (Bankr. E.D. Va. 2001) (quoting *Miller v. J.D. Abrams, Inc., (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)); *see also Miller,* 156 F.3d at 603 (stating that the Supreme Court had left three possible "readings" to a finding of willfulness under § 523(a)(6): "The standard might be met by any tort generally classified as an intentional tort, by any tort substantially certain to result in injury, or any tort motivated by a desire to inflict injury" and holding that "either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6)"); *Stone St. Capital, Inc. v. Granati (In re Granati)*, 270 B.R. 575, 591 (Bankr. E.D. Va. 2001), *aff'd*, 307 B.R. 827 (E.D. Va. 2002), *aff'd*, 63 Fed. App'x 741 (4th Cir. 2003) (citing *Johnson,* 262 B.R. at 670). The Court of Appeals for the Fourth Circuit appears to have adopted the "objective substantial certainty" or "subjective motive" test to satisfy the willfulness requirement. *Parsons v. Parks (In re Parks)*, No. 03-1072, 2003 WL 22989684, at *1 (4th Cir. Dec. 19, 2003) ("[t]he test, then, is whether the debtor acted with 'substantial certainty [that] harm [would result] or a subjective motive to cause harm.'") (quoting *Miller,* 156 F.3d at 603). Accordingly, the Court will apply this test for purposes of its willful injury analysis.

3

Plaintiff's malicious prosecution claim against the Defendant is premised under Virginia law on the Defendant's involvement in charges brought against him for violating Va. Code § 18.2–371.1 (child abuse and neglect), Va. Code § 18.2–67.2 (object sexual penetration), and Va. Code § 18.2–374 (contributing to the delinquency of a minor) (cumulatively, the "Charges"). Plaintiff contends that the Defendant coerced her daughter into making baseless accusations against him that led to the Charges that were brought. Plaintiff maintains that the Defendant was motivated to do so by a strong desire to avoid the repayment of a financial obligation. Plaintiff's allegations regarding Defendant's intentional conduct are sufficient to establish either the "objective substantial certainty" or the "subjective motive" necessary to satisfy the Supreme Court's criteria for "willful injury" under § 523(a)(6) of the Bankruptcy Code. *Miller*, 156 F.3d at 603.[3] If proven, Plaintiff's allegations would suggest that the Defendant either (i) had to intend for Plaintiff to incur or (ii) had to be substantially certain that Plaintiff would incur the kind of injuries about which the Plaintiff has complained.

"Malicious prosecution actions are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applying to most other tort claims." *Lee v. Southland Corp.*, 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). Courts disfavor these actions because "criminal prosecutions are essential for the maintenance of an orderly society and people should not be discouraged from bringing such actions for fear of subsequent civil proceedings against them." *Id.* (citing *Niese v. Klos*, 216 Va. 701, 703, 222 S.E.2d 798, 800 (1976)). A plaintiff must prove each of the following elements to succeed in a claim for malicious prosecution: "(1) the prosecution was brought by or with the cooperation of the defendant; (2)

---

[3] This result is consistent with that reached by other courts that have held that state court malicious prosecution judgments are nondischargeable. *See Abbo v. Rossi, McCreery & Assocs. (In re Abbo)*, 168 F.3d 930, 931 (6th Cir. 1999); *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 643 (8th Cir. 1999); *Stahl v. Gross (In re Gross)*, 288 B.R. 655, 662 (Bankr. E.D.N.Y. 2003).

the prosecution ended in a manner favorable to the plaintiff; (3) the defendant was without probable cause in bringing the action; and (4) the action was brought by the defendant with malicious intent." *Cowher's Trucking, Inc. v. Zack (In re Zack)*, 99 B.R. 717, 723 (Bankr. E.D. Va. 1989) (citing *Shuman v. McGhee (In re McGhee)*, 80 B.R. 65, 67 (Bankr. E.D.Va. 1987)).

First, a plaintiff must prove that the defendant actually brought about the prosecution, or that in cooperating with the prosecution, the defendant was the proximate and efficient cause of the prosecution. *Id.*; *Wyatt v. Gridella*, 82 W.Va. 266, 95 S.E. 956 (1918). Here the Plaintiff alleges that the Defendant procured charges by having her daughter fabricate allegations in order to avoid repaying a debt she owed him. On October 3, 2006, the Plaintiff gave the Defendant $13,500. There was conflicting evidence as to whether this payment was meant to be a loan or a gift. The parties were living together and contemplating marriage at the time. The money was used (as it was intended by both parties) to satisfy some of Defendant's outstanding financial obligations. After the parties' separation, Plaintiff made it clear that he expected the money to be repaid. Thereafter, the Defendant treated the receipt of the money as a loan.

Three days after the $13,500 payment was made, the Plaintiff and Defendant were involved in a violent altercation. The police were called. The Defendant and her daughter left the house in which they were living with the Plaintiff that evening. The next day, on October 7, 2006, the Defendant returned to the home, but only to pick up some clothing and a backpack belonging to her daughter. The Plaintiff and Defendant met at a restaurant on the morning of October 8, 2006 to discuss the prospect of reconciliation. Following their meeting, the Plaintiff called the Defendant, and they spoke on the telephone for at least forty-five minutes. They agreed to meet again later that afternoon at the Plaintiff's home. The Defendant, arriving first, waited in her car in the driveway as the Plaintiff had changed the locks, and he had not yet

5

returned from running errands. While she waited, Defendant's twelve-year-old daughter, A.L.,[4] phoned. Defendant advised her daughter that she and the Plaintiff were discussing possible reconciliation. She asked her daughter whether the daughter was comfortable moving back into the Plaintiff's house. The child stated that she was not. When the Defendant pressed her daughter for a reason for her discomfort, A.L. explained that the Plaintiff had touched her inappropriately. At that point, the Defendant abandoned all thought of reconciliation. She immediately left the driveway and went to pick up her daughter. The Defendant called a crisis center hot line. The crisis center advised the Defendant that she should immediately take her daughter to a hospital to be examined. The Defendant did so.

Under Virginia law, healthcare professionals are mandatory reporters. They must inform the "local department of the county or city wherein the child resides or wherein the abuse or neglect is believed to have occurred" if they suspect child abuse has occurred. Va. Code Ann. § 63.2–1509. In this case, a detective, on other business, was already at the hospital to which A.L. was taken. The hospital arranged for that detective to take a statement from her. The next day, Detective Meadows, a Chesterfield County police officer, contacted the Defendant and arranged to meet her daughter. When they met, Detective Meadows conducted a forensic interview alone with A.L.[5] Only after interviewing the child did Detective Meadows meet with her mother. At some point during the child's discussions with Detective Meadows, the Defendant's daughter stated that the Plaintiff, in addition to the inappropriate touching, had forced her to watch pornography on his computer. She had not told her mother about this. Based on the forensic interview, Detective Meadows concluded that the allegations of abuse had

---

[4] Pursuant to Local Rule 5005-1(G)(2) and the E-Government Act of 2002, the Court has substituted the initials of the Defendant's minor daughter in lieu of her name.

[5] A forensic interview is one in which the questions asked have no clear right answer.

6

in fact occurred. Detective Meadows then contacted the office of the Commonwealth's Attorney. He spoke with Julia Sichol, an Assistant Commonwealth's Attorney, and suggested that she speak with the child. Detective Meadows also attempted to talk to the Plaintiff about the accusations, but the Plaintiff refused.

Ms. Sichol conducted an interview alone with the Defendant's daughter. Ms. Sichol stated that she made her own, independent determination that there was probable cause to press the Charges. Based on her inquiry, Ms. Sichol authorized Detective Meadows to obtain warrants from the magistrate charging the Plaintiff with object sexual penetration under Virginia Code § 18.2–67.2 and contributing to the delinquency of a minor under Virginia Code § 18.2–374. Because of an error in the magistrate's office, the Plaintiff was charged with child abuse and neglect rather than contributing to the delinquency of a minor. The Plaintiff was arrested and charged with object sexual penetration under Virginia Code § 18.2–67.2 and child abuse and neglect under Va. Code § 18.2–371.1; he met bail. Ms. Sichol nol-prossed the child abuse and neglect charge when the mistake in the charge was brought to her attention. Later Ms. Sichol arranged for the Plaintiff to be charged correctly with contributing to the delinquency of a minor. There was no evidence that the Defendant ever requested that any of the Charges be brought against the Plaintiff. In fact, three witnesses testified affirmatively to the contrary.[6]

Based upon this evidence, it is clear that the Defendant was not the proximate and efficient cause of the Plaintiff's prosecution for object sexual penetration. Instead, she behaved as any other parent would have under the circumstances. She took her child to the hospital. The hospital was required by law to report the abuse to the proper authorities. The Assistant Commonwealth's Attorney made an independent assessment, based on her interview with the Defendant's daughter, whether there was probable cause to press charges against the Plaintiff.

---

[6] Detective Meadows, Ms. Sichol, and the Defendant all testified to this.

7

*See Thomas v. Cisneros*, 596 S.W.2d 313, 317 (Tex. Civ. App. 1980) ("if the defendant [in a malicious prosecution action] stated the facts fully and fairly to the District Attorney . . . and such officer determines that such facts constitute a crime and proceeds to formulate the necessary papers to set the prosecution in motion, the . . . defendant is not liable") (citations omitted). While Plaintiff suggested that the Defendant coerced her daughter into fabricating the abuse, there is no credible evidence to support that accusation.[7]

Nor does the evidence suggest that the Defendant procured the prosecution of the Plaintiff for child abuse and contributing to the delinquency of a minor. The evidence was undisputed that the child abuse and neglect charge arose from an error at the magistrate's office. The contributing to the delinquency of a minor charge resulted from the daughter's claim that Plaintiff forced her to view pornography on his computer. The Defendant only learned about this allegation after her daughter had spoken to the police about it. The Defendant cannot be held liable for procuring the prosecution of charges about which she was unaware. The Defendant's role was limited to cooperating with the police investigation of these allegations after they already had been brought to the attention of the appropriate authorities. *See King v. Martin*, 150 Va. 122, 127, 142 S.E. 358, 361 (1928) (defendant had nothing to do with the prosecution of the plaintiff except to appear as a witness and speak with the police when summoned). When the Defendant was asked by the police for information about the location of the computer, she told them where the computer was located in the Plaintiff's home so that they could execute a search warrant and retrieve it. The computer was found to be missing.

Second, a plaintiff must demonstrate that "the prosecution ended in a manner favorable to the plaintiff." *Cowher's Trucking, Inc*, 99 B.R. at 723 (citing *Shuman*, 80 B.R. at 67). The

---

[7] This case is thus distinguished from *Mowry v. Miller*, 3 Leigh 561, 30 Va. 561 (1832), where the defendant was found liable for malicious prosecution after he coerced an agent into lying to authorities and telling them that the plaintiff stole $1400 in bank notes.

8

Plaintiff has successfully established this element. The contributing to the delinquency of a minor and child abuse and neglect charges were nol-prossed by the Assistant Commonwealth's Attorney. The charge of object sexual penetration resulted in an acquittal following a jury trial. Both of these outcomes are favorable to the Plaintiff.

Third, a plaintiff must prove that the defendant did not have probable cause in bringing the action. *Id*. Although the Court has already determined that the Defendant did not procure the prosecution of the Charges, the Plaintiff has failed to meet his burden of proving this element as well. "On the question of probable cause in an action for malicious prosecution, the facts and circumstances, knowledge and information, must be viewed from the standpoint of the defendant[] and not that of the plaintiff; and if [the defendant], in good faith, being . . . of ordinary prudence, entertained the reasonable belief that it was [the defendant's] duty to institute and maintain the proceedings complained of, [the defendant] cannot be held liable." *Southern Ry. Co. v. Mosby*, 112 Va. 169, 180, 70 S.E. 517, 520 (1911) (quoting *Porter v. Mack*, 50 W.Va. 581, 583, 40 S.E. 459, 459 (1901)). Probable cause is "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Lee*, 219 Va. at 26, 244 S.E.2d at 758–59 (quoting *Va. Ry. & Power Co. v. Klaff*, 123 Va. 260, 266, 96 S.E. 244, 246 (1918)).

Ms. Sichol testified that the charge of contributing to the delinquency of a minor was obtained through a "direct indictment." It went straight to the grand jury; no preliminary hearing was conducted. The grand jury returned a true bill indicting the Plaintiff. Ms. Sichol testified that it was her practice typically to focus only on one particular incident at a trial involving child sexual abuse because asking children about more than one incident can cause confusion while

9

they are testifying. Therefore, she had the contributing to the delinquency of a minor charge nol-prossed before trial.

A preliminary hearing was conducted after a warrant was issued on the object sexual penetration charge. "The function of a preliminary hearing is to determine before a judicial officer whether probable cause exists to believe that an accused may have committed a criminal offense and whether reason exists for a grand jury to investigate the charges." *Lebedun v. Commonwealth*, 27 Va. App. 697, 713, 501 S.E.2d 427, 434–35 (Va. Ct. App. 1998) (citing *Webb v. Commonwealth*, 204 Va. 24, 31, 129 S.E.2d 22, 28 (1963)). A judge in the Juvenile and Domestic Relations Court for Chesterfield County conducted the preliminary hearing in this case on January 29, 2007. At the conclusion of the hearing and after consideration of the evidence presented, the court found that there was probable cause as to the charge. The judge sent the matter to the grand jury.

Grand juries "consider bills of indictment prepared by the attorney for the Commonwealth and . . . determine whether as to each such bill there is sufficient probable cause to return such indictment 'a true bill.'" Va. Code Ann. § 19.2–191 (2004); *see also Powell v. Commonwealth*, 261 Va. 512, 535, 552 S.E.2d 344, 357 (2001) (quoting Va. Code Ann. § 19.2–191) (citing *Evans v. Commonwealth*, 183 Va. 775, 780, 33 S.E.2d 636, 638 (1945)) (stating that it is the province of the grand jury to determine from the evidence presented whether it is enough to sustain the charge). In the majority of jurisdictions, grand jury indictments act as prima facie evidence of probable cause. *Westreich v. McFarland*, 429 F.2d 947, 949 (4th Cir. 1970) (citing *White v. Coleman*, 277 F. Supp. 292, 297 (D.S.C. 1967); *Hopkinson v. Lehigh Valley R.R.*, 249 N.Y. 296, 300, 164 N.E. 104, 106 (1928)).

10

The Court of Appeals for the Fourth Circuit has observed that Virginia is one of the minority of jurisdictions that has not held that an indictment is prima facie evidence of probable cause. *Id*. *See also Shuman v. McGhee (In re McGhee)*, Nos. 85-00482-R, 85-0269-R, 1986 WL 797750, at *5 (Bankr. E.D. Va. Jan. 30, 1986) (citing *Westreich*, 429 F.2d at 949). However, at least one Virginia case suggests that an indictment does act as prima facie evidence of probable cause. *Southern Ry. Co.*, 112 Va. at 181, 70 S.E. at 521 ("[W]e fail to find in the record evidence sufficient to rebut the prima facie evidence of probable cause consisting of the undisputed facts that after examining the witnesses the police justice sent the defendant in error on to the grand jury, and that the grand jury found true bills (two) of indictment against him, although he was afterwards acquitted of both.").

This seeming inconsistency about whether an indictment is prima facie evidence of probable cause is irrelevant. The law "places such a heavy burden on the plaintiff in a malicious prosecution suit that the presumption is unnecessary." *Westreich*, 429 F.2d at 949 (citing *Wiggs v. Farmer*, 205 Va. 149, 152, 125 S.E.2d 829, 831 (1964)). As "the burden is always on the plaintiff to negative the existence of" probable cause, a presumption that probable cause exists is immaterial. *Id.* (quoting *Clinchfield Coal Corp. v. Redd*, 123 Va. 420, 443, 96 S.E. 836, 843 (1918)). Furthermore, the findings both at the preliminary hearing and before the grand jury are "pertinent evidence" that probable cause did exist. *Cf. Id.* ("In Virginia, as in other states that have not adopted the majority view, the fact that the plaintiff was indicted is, nevertheless, pertinent evidence tending to show probable cause.") (citations omitted).

The Plaintiff attempted to negate the existence of probable cause regarding the contributing to the delinquency of a minor charge by showing that the computer seized by police when they executed the search warrant belonged not to him but to the Defendant. The Plaintiff

11

contends that the Defendant's daughter viewed pornography on the seized computer on her own. The evidence as to whether one could determine who viewed pornography on the seized computer was conflicting at best. The Court finds that this determination is immaterial, as the computer on which the Defendant's daughter claims to have seen the pornography was never located.[8]

In attempting to negate the existence of probable cause as to the object sexual penetration charge, Plaintiff presented evidence of two alibis that he had introduced at his criminal trial. Jackie Dorman and her daughter both testified that Plaintiff was in their presence during the time that the child alleged the abuse had occurred. The Plaintiff did not mention the alibis to the police until well into their investigation of the incident. There is no credible evidence that the Defendant hid this information from the police during their investigation. Detective Meadows testified that he attempted to contact Jackie Dorman prior to the criminal trial but that she had refused to speak with him. Although the Plaintiff was acquitted at the criminal trial,[9] Ms. Sichol testified in this case that she believed that there was probable cause to charge the Plaintiff as she did. Ms. Sichol further testified that she still believes today that probable cause existed. Given that the Juvenile and Domestic Relations Court and the grand jury separately reached the same conclusion, and there being no credible evidence that the Defendant lied to the police, the Court finds that the Plaintiff's evidence is insufficient to disprove that there was probable cause to bring the object sexual penetration charge or the contributing to the delinquency of a minor charge against him.

---

[8] While there was no probable cause to bring the child abuse and neglect charge against the Plaintiff, Plaintiff was unable to prove that the Defendant procured the prosecution of this charge. The undisputed testimony was that that charge was brought in error. It was nol-prossed before the preliminary hearing.

[9] Very different burdens of proof are involved here. At the criminal trial, the Commonwealth of Virginia had the burden of proving the Plaintiff's guilt beyond a reasonable doubt. Here, the Plaintiff has the burden of proving that there was no probable cause for having brought the Charges against him.

12

Finally, a plaintiff must prove that the defendant procured the charges with malicious intent. *Cowher's Trucking, Inc*, 99 B.R. at 723 (citing *Shuman*, 80 B.R. at 67). Malice is more than ill will; "it includes every sinister or improper motive, *i.e.*, every motive other than a desire to bring to punishment a party believed to be guilty of a crime." *Evans v. Michaelson*, 146 Va. 64, 69, 135 S.E. 683, 684 (1926) (citations omitted). Assuming *arguendo,* that the Plaintiff could establish that the Defendant did procure his prosecution and had no probable cause to bring the Charges, Plaintiff fails to establish any claim of malice. In this case, the Plaintiff presented testimony suggesting that problems in his relationship with the Defendant may have motivated her procuring the prosecution. There was significant evidence that the Plaintiff and Defendant had a volatile relationship culminating in the October 6, 2006 fight that resulted in police intervention. The Plaintiff testified that the Defendant procured the prosecution to avoid the repayment of the $13,500 loan that he had made to her. The Plaintiff also pointed to portions of the Defendant's deposition where she stated that she was angry that the Plaintiff was acquitted at trial as evidence of her malicious intent.

The Plaintiff has failed to demonstrate that the Defendant acted with any improper motive. While there were certainly domestic relations issues, the Plaintiff and Defendant were in the process of reconciling when the Defendant's daughter made the accusations known to her mother. Further, Detective Meadows testified that domestic relations issues are common in sexual abuse cases. It seems unlikely that anger and frustration between the couple motivated the Charges. The Defendant's desire to avoid repaying the $13,500 loan did not motivate the Charges; there was no evidence she ever attempted to extort the Plaintiff. The Plaintiff never suggested that the Defendant offered to drop the Charges if the Plaintiff let her keep the money. It is illogical to assume that a criminal prosecution of sexual abuse involving a child would have

13

any effect on the status of a financial transaction between the victim's mother and the accused. Although the Defendant stated at her deposition that she was angry about the acquittal, this was entirely consistent with her deep-seated hope that the Plaintiff would be punished because she believed that he had abused her daughter. The fact that the case went all the way through a criminal trial further evidences the Defendant's true motive of seeing that the person she believed was guilty was punished. Therefore, the Court concludes that there was no malice underlying the procurement of the criminal charges.

Given the Plaintiff's burden of proof and in light of the evidence presented, the Court finds that the Plaintiff has not proven three of the elements necessary to sustain this malicious prosecution action. Because the Plaintiff has not proven each of the elements of malicious prosecution under Virginia law, he has not demonstrated that the debt is nondischargeable. He has not proven that the Defendant caused intended injury to him as a result of malicious prosecution. Therefore, § 523(a)(6) of the Bankruptcy Code does not render this claim nondischargeable.[10]

In the next count of the Complaint, the Plaintiff alleges that the Defendant intended to defraud the Plaintiff out of the $13,500 he gave her. Under 11 U.S.C. § 523(a)(2)(A) a debt is

---

[10] Public policy favors the Court's ruling today. As the Court has noted, malicious prosecution cases, especially those based on underlying criminal prosecutions, are disfavored in Virginia. *See Lee*, 219 Va. at 26, 244 S.E.2d at 758 (citing *Niese*, 216 Va. at 703, 22 S.E.2d at 800). In particular, malicious prosecution cases based on child sexual abuse charges should be heavily scrutinized. Victims in these cases are often hesitant to come forward; they are embarrassed or confused about what has happened to them. Consequently, the Commonwealth of Virginia has enacted legislation that not only requires certain authorities to report suspected charges of child abuse, Va. Code Ann. § 63.2–1509, but also requires local jurisdictions that receive such reports to follow up on them with their own independent investigation, Va. Code Ann. § 63.2–1503. The risk of a malicious prosecution action following the ill-fated pursuit of suspected child abuse charges serves to deter local officials from fulfilling the state-mandated requirements of their office. Yet, the statutory scheme adopted by the Virginia legislature strongly endorses the investigation and, if appropriate, the prosecution of child sex abuse crimes. *See, e.g.,* Va. Code Ann. § 63.2–1510. Persons making a report pursuant to Va. Code Ann. §§ 63.2–1509 and 1510 are immune from civil liability unless it is proven that they acted in bad faith or with malicious intent. Va. Code Ann. § 63.2–1512 (2007). Frequently in sexual abuse cases, the only evidence of wrongdoing is the word of the child victim. Unless malicious prosecution suits are subjected to the strictest scrutiny, the mechanism the Virginia legislature has implemented for protecting children could be seriously undermined.

nondischargeable if it is for money obtained by "false pretenses, a false representation, or actual fraud." Plaintiff alleges in count two of the Complaint that the Defendant's actions constituted an actual fraud perpetrated upon the Plaintiff, which damaged the Plaintiff. In order to prevail on this count, the plain language of § 523(a)(2)(A) requires that the "money . . . [be] obtained by" the fraud. 11 U.S.C.A. § 523(a)(2)(A) (2008 Cum. Ann. Supp.). "[A] plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999). The Court of Appeals for the Fourth Circuit analyzes claims for nondischargeability under § 523(a)(2)(A) by focusing on misrepresentations. *See Biondo*, 180 F.3d at 134. A plain reading of § 523(a)(2)(A) demonstrates that Congress did not except from discharge any debt incurred as a result of fraud, but only those debts in which the debtor used fraudulent means to obtain the money. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007).[11]

The Plaintiff claims that the Defendant coerced her daughter into fabricating sexual abuse charges so that "[she would] not have to repay the money" (Pl.'s Compl. ¶ 20) she borrowed from the Plaintiff.[12] Plaintiff points to the fact that the sexual abuse allegations were made just five days after Defendant received his check for $13,500 and only three days after the check had cleared. Assuming *arguendo* that the sexual abuse charges were manufactured by Defendant to

---

[11] The Courts of Appeals for the Sixth and Seventh Circuits have adopted a more expansive view of § 523(a)(2)(A), including "general tricks and deceit rather than only misrepresentations." *OSB Mfg., Inc. v. Hathaway (In re Hathaway)*, 364 B.R. 220, 232 (Bankr. E.D. Va. 2007) (citing *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)). Because the Fourth Circuit has not adopted this more expansive view, the Court's analysis will focus entirely on misrepresentations. However, even if the Fourth Circuit were to hold that § 523(a)(2)(A) includes tricks and deceit, the Plaintiff failed to prove that the Defendant in this case obtained the money by trickery or deceit.

[12] There was no credible evidence presented at trial in support of this allegation.

15

enable her to avoid having to repay the loan, the establishment of this fact alone would not have been sufficient to render the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).

The Plaintiff made no allegation about nor offered any evidence of a false statement made by the Defendant or by her daughter prior to obtaining the money from him. The evidence shows that the only statements that the Plaintiff contends were false involved the allegations of sexual abuse. Those allegations were made on October 8, 2006, five days after Plaintiff had given Defendant the money. There is no other evidence that Defendant obtained the money by fraudulent means.[13]

Likewise, the Plaintiff has not proven justifiable reliance. He cannot show that he relied upon the alleged fraudulent misrepresentations at the time he gave the $13,500 check to the Defendant. They had not yet occurred. Nor was it proven that the alleged false statements were made to the Plaintiff. They were made to the hospital, to the police, and to the Assistant Commonwealth's Attorney. Given both the timing and the circumstances under which the alleged false statements arose, Plaintiff cannot possibly show justifiable reliance upon those remarks. There is simply no evidence to suggest that Plaintiff was fraudulently induced to make the payment. As Plaintiff failed to prove two of the essential elements necessary to maintain a cause of action for fraudulent misrepresentation or actual fraud, he has not carried his burden of proof on this count. Section 523(a)(2) does not except from discharge the $13,500 loan that the Defendant received from the Plaintiff.

---

[13] The Defendant testified that when she received the money from the Plaintiff she thought that the money was a gift. The parties were living together at the time and were contemplating marriage. Defendant spent the money that she received precisely as the parties had contemplated, to pay off some of Defendant's outstanding debt. Defendant never misrepresented her financial situation; Plaintiff admitted at trial that he was well aware that she had a substantial amount of outstanding debt. Plaintiff had co-signed a loan application with the Defendant that had just recently been denied. Defendant treated the $13,500 as a loan after the parties separated, and the Plaintiff asked for the money back.

16

The third count of the Complaint requests punitive damages. The predicate for this request lies entirely on the previous two counts of the Complaint. As Plaintiff failed to establish his entitlement to relief under either of the prior counts, his prayer for punitive damages also must be denied.

Based on the evidence presented at trial, the Court finds that the Plaintiff has failed to carry his burden of proof under §§ 523(a)(2) and (a)(6) of the Bankruptcy Code. Plaintiff was unable to prove that he suffered a willful and malicious injury as a result of malicious prosecution by the Defendant. Plaintiff's claim of malicious prosecution fails because he did not prove that the Defendant maliciously procured his prosecution, without probable cause, for sexual abuse charges. Similarly, Plaintiff was unable to prove that the Defendant obtained money from him by false pretenses, a false representation, or actual fraud. Plaintiff's claim that the $13,500 loan he made to the Defendant was fraudulently induced fails because he did not prove that the Defendant made a fraudulent misrepresentation in obtaining the money upon which he reasonably relied. Therefore, Plaintiff's claims against the Defendant are dischargeable.

A separate order shall issue.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Jeffrey S Haas
c\o Debra D. Corcoran, Esq.
1650 Willow Lawn Drive, Suite 300
Richmond, VA  23230

Debra D. Corcoran
P.O. Box 29421
Richmond, VA  23233

Theadora Nicole Trammell
4013-103 Hailey Crescent Drive
Midlothian, VA  23112

Nnika E. White
Law Offices of White and Associates, PC
2505 Pocoshock Place, Suite 203
Richmond, VA  23235

Bruce H. Matson
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA  23218-2499